1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF CONNECTICUT
2                         BRIDGEPORT DIVISION

3

IN RE:                            .  Chapter 11
4                                 .  Case No. 22-50073 (JAM)
HO WAN KWOK, *et al.*,            .
5                                 .  (Jointly Administered)
         Debtors.                 .
6                                 .
. . . . . . . . . . . . . . . .   .
7                                 .
LUC A. DESPINS, CHAPTER 11        .  Adversary Proceeding
8  TRUSTEE,                       .  No. 23-05018 (JAM)
                                  .
9          Plaintiff,             .
                                  .
10    v.                          .
                                  .
11 GOLDEN SPRING (NEW YORK)       .
   LTD., and CHINA GOLDEN         .
12 SPRING GROUP (HONG KONG)       .
   LIMITED,                       .
13                                .
         Defendants.              .
14                                .
. . . . . . . . . . . . . . . .   .
15                                .
LUC A. DESPINS, et al.,           .  Adversary Proceeding
16                                .  No. 23-05028 (JAM)
         Plaintiffs,              .
17                                .
      v.                          .
18                                .  Courtroom 123
ACE DECADE HOLDINGS               .  Brien McMahon Federal Building
19 LIMITED, et al.,               .  915 Lafayette Boulevard
                                  .  Bridgeport, Connecticut 06604
20       Defendants.              .
                                  .  Tuesday, March 26, 2024
21 . . . . . . . . . . . . . . .  .  1:04 p.m.

22

                         TRANSCRIPT OF HEARING
23           BEFORE THE HONORABLE JULIE A. MANNING
                   UNITED STATES BANKRUPTCY JUDGE

24

25

<pre>
 1   APPEARANCES:

 2   For the Chapter 11
     Trustee:                  Patrick R. Linsey, Esquire
 3                             NEUBERT PEPE & MONTEITH, P.C.
                               195 Church Street
 4                             13th Floor
                               New Haven, Connecticut 06510
 5
                               -and-
 6
                               Luc A. Despins, Esquire
 7                             PAUL HASTINGS, LLP
                               200 Park Avenue
 8                             New York, New York 10166

 9                             Nicholas A. Bassett, Esquire
                               2050 M Street, NW
10                             Washington, DC 20036

11   For Yanping "Yvette"
     Wang:                     Carl Gulliver, Esquire
12                             CARL GULLIVER LAW, LLC
                               470 James Street
13                             Suite 007
                               New Haven, Connecticut 06513
14
                               -and-
15
                               Cooper J. Macco, Esquire
16                             MACCO & COREY, P.C.
                               2950 Express Drive South
17                             Suite 109
                               Islandia, New York 11749
18

19

20   Audio Operator:           Electronically recorded

21   Transcription Company:    Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service.
</pre>

1                               INDEX

2   MOTIONS:                                              PAGE

3   Matter
    No. 1:      (Re: 40) Motion of Chapter 11 Trustee for        5
4               Order Enforcing Judgment and Requiring
                Turnover of Storage Unit Contents to Chapter
5               11 Estate filed by Plaintiff Despins, Luc A.,
                Chapter 11 Trustee
6
                Court's Ruling:                                 11
7
    Matter
8   No. 2:      (Re: 16) Motion to Dismiss Adversary            12
                Proceeding Filed by Cooper J. Macco on behalf
9               of Yanping "Yvette" Wang, Defendant

10              Court's Ruling:                                 45

11  Transcriptionist's Certificate                             57

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1          (Proceedings commenced at 1:03 p.m.)

 2              THE CLERK:  Case Number 22-50073, Ho Wan Kwok.

 3   Adversary 23-05018, Despins v -- I'm sorry, I lost my

 4   screen -- Despins v Golden Spring, et al.; Adversary 23-

 5   05028, Despins v Ace Decade Holdings Ltd., et al.

 6              THE COURT:  Okay.  Good afternoon.

 7              If we could have appearances for the record,

 8   starting with the Chapter 11 Trustee, please.

 9              MR. DESPINS:  Good afternoon, Your Honor.  Luc

10   Despins, Chapter 11 Trustee.

11              THE COURT:  Good afternoon.

12              MR. BASSETT:  Good afternoon, Your Honor.  Nick

13   Bassett from Paul Hastings on behalf of the Chapter 11

14   Trustee.

15              THE COURT:  Good afternoon.

16              MR. LINSEY:  Good afternoon, Your Honor.  Patrick

17   Linsey, Neubert Pepe & Monteith, Connecticut counsel for the

18   trustee.

19              THE COURT:  Good afternoon.

20              MR. MACCO:  Good afternoon, Your Honor.  Cooper

21   Macco, Macco & Corey, in the Ace Decade adversary proceeding,

22   on behalf of Defendant Yvette Wang, admitted pro hac vice.

23              THE COURT:  Good afternoon.

24              MR. GULLIVER:  Good afternoon, Your Honor.  Carl

25   Gulliver.  I have local counsel to Mr. Macco.

1            THE COURT:  Good afternoon.

2            All right.  We have some matters in the main case

3    and in the Adversary 5018 regarding the turnover of the

4    storage unit contents.  And I haven't studied, but I think I

5    saw a revised -- that there was a revised proposed order.

6            Attorney Bassett, you look like you're going to

7    talk about this matter; is that right?

8            MR. BASSETT:  Yes, Your Honor.

9            THE COURT:  Go right ahead.

10           MR. BASSETT:  Thank you, Your Honor.

11           So I am pleased to report that I believe we have

12   resolved this matter and this is the motion that we filed on

13   February 23rd in the Golden Spring Adversary Proceeding 23-

14   5018, ECF 40, a motion seeking to turn over to the estate of

15   certain contents of storage units that are the subject of a

16   subpoena that the trustee had executed.

17           We filed that motion.  See, there are four storage

18   units located at a place called Westy Storage, which is not

19   far from the Mahwah mansion in Mahwah, New Jersey.  We filed

20   that motion on the 23rd.  The Court issued a notice of

21   hearing setting an objection deadline of March 19th.  In

22   accordance with that order, we then served that notice of

23   hearing on Westy Storage, and then on both, the entity HGA,

24   which we understand to be the current tenant of those units,

25   and then on the Taurus Fund entities, which was the prior

1  tenant of the units.

2         The objection deadline of March 19th, 2024, came

3  and went.

4         There was one objection filed on the evening of

5  March 19th by Taurus Fund and it was really a limited

6  objection which basically stated that Taurus -- that Taurus

7  Fund was objecting to the motion insofar that it applied to

8  the contents of two of the storage units, which Taurus Fund

9  alleges contain property that is theirs.  We dispute that.

10 But for purposes, we were able to resolve that, which I'll

11 get to in a second.  And then they said that the other two

12 storage units at issue were ones that they took no position

13 with respect to.  They weren't asserting any ownership

14 interests over the contents.

15        So after receiving that objection, we reached out

16 to counsel for Taurus Fund and we were able to resolve their

17 objection through the revised proposed order, which we

18 submitted at ECF 44, I believe, yesterday, which the Court

19 referred to.  And, basically, what that order says is that

20 all the property in the two storage units with respect to

21 which Taurus Fund took no position, those are storage units

22 1A32 and CF09, the order states that all the contents of

23 those units are property of the estate and shall be

24 immediately turned over to the estate.

25        The order says that the other two units, the ones

1  with respect to which Taurus Fund is asserting an ownership

2  interests, and those are units CA14 and CB14, those -- the

3  contents of those units will, at the trustee's direction and

4  supervision, be transferred to the Mahwah Mansion for

5  safekeeping, pending the resolution of that Mahwah adversary

6  proceeding involving the Taurus Funds or further order of the

7  Court; the idea being that all rights are reserved, with

8  respect to the contents of those units.

9         To be clear, you know, this order and the

10  agreement by the trustee to this order is not any sort of

11  concession that the contents of those units do, in fact,

12  belong to Taurus Fund.  And we think, for the reasons we set

13  out in our motion, that they are actually property of the

14  estate, but we also are fine with not litigating that issue

15  right now.

16         The most important thing for the trustee is that

17  the contents be preserved, so we're going to have them

18  transferred to the mansion.  They will, at all times, be

19  subject to the existing preliminary injunction order that

20  governs the mansion, its contents, and all property of Taurus

21  Fund, including the provisions, with respect to the oversight

22  of the security firm that's there.  So the idea is that those

23  contents will remain there until such time as that adversary

24  proceeding is concluded or until such time that it's viewed

25  as otherwise teed up to determine if those contents are

1  property of the estate now, irrespective of the adversary

2  proceeding.

3          So, that's the sum and substance of the order,

4  Your Honor.  It gives us the contents of two of the units now

5  and sort of preserves the issue of the other two for another

6  day while also making sure that they are kept and stored

7  safely in the meantime.

8          THE COURT:  Okay.  I, again, am holding a revised

9  proposed order that I see changes, but I haven't really read

10 it, although, I'm somewhat reading it.  In the two units

11 where everything is going to be turned over to the trustee, I

12 presume, which I shouldn't, I suppose, that you have some

13 process for that to happen?

14         MR. BASSETT:  Yes, Your Honor.

15         I mean, we don't have -- we have not ironed out

16 the specific logistics of how and where we are going to

17 transfer the contents.  Some of the contents are, you know,

18 relatively small things, boxes, et cetera, that I think can

19 easily, with the assistance of Kroll, be taken from there to

20 another secure location.

21         Another option, if we deem it necessary, would be

22 to get permission to continue paying for the lease of that

23 storage unit and just keep the property there.  We still need

24 to figure out the logistics of that --

25         THE COURT:  Okay.

1          MR. BASSETT:  -- but the important thing for

2   purposes of this motion was just to get the relief that

3   allows us to dictate what happens to those contents going

4   forward.

5          THE COURT:  I understand.  I'm just asking

6   questions so that if something occurs, then I have some idea

7   of whether or not there was some process in place, right.

8          And then I think I have a recollection that the

9   motion stated somewhere, and maybe more than one place, that

10  there's been a detailed inventory of all these units done by

11  the trustee or by the trustee's professionals; is that

12  correct?

13         MR. BASSETT:  That's correct, Your Honor.

14         THE COURT:  So you know what's supposed to be in

15  the two units that are where the contents are being turned

16  over to the trustee in accordance with this order and the two

17  units where the contents are going to be transferred to the

18  Mahwah Mansion?

19         MR. BASSETT:  That's correct, Your Honor.  Based

20  on the site visits that have occurred at the direction, and

21  with the attendance of the trustee's professionals, we do

22  have an inventory.  We also were assured by talking to the

23  owner of the storage facility and its counsel, that all of

24  the locks and passwords have been changed, such that only the

25  trustee could access those units.  So we're relatively

1  confident that, you know, there's not going to be any issue

2  between now and getting the contents out of, you know,

3  anything being removed.

4          THE COURT:  The people that operate the Westy

5  changed all the locks?  Is that --

6          MR. BASSETT:  When we -- we had filed a motion

7  related to the subpoena that we served, which the Court

8  granted that gave the trustee the authority to go in and

9  conduct inspections of the units.  Pursuant to the authority

10  granted by that subpoena, Westy Storage and its counsel have

11  been very, very cooperative.  They understand that pursuant

12  to the subpoena, the trustee was given the ability to not

13  only initiate, but also complete his investigation during a

14  period in which there would be no risk of any contents being,

15  you know, removed, modified, et cetera.  And to facilitate

16  that, they made sure that only the trustee had access to the

17  units.

18          THE COURT:  And I'm making a -- I'm ordering that

19  the estate contents are property of the debtors' Chapter 11

20  estate and counsel agreed to that?

21          MR. BASSETT:  Yes, Your Honor.

22          THE COURT:  I assume -- I mean, you're saying he

23  did, but I hope he read that.  In any event, he should have

24  if he's agreeing to it, right?

25          MR. BASSETT:  That's correct, Your Honor.

1     I think it's clear from their objection, and I've

2  had multiple conversations with Attorney Conway, and he

3  stated very clearly that Taurus Fund is not taking a position

4  whatsoever as to those two units and, therefore, is not

5  contesting the finding that they are property of the estate.

6     THE COURT:  Okay.  All right.

7     Does anyone else wish to be heard on the trustee's

8  motion for order enforcing judgment and requiring turnover of

9  storage unit contents to the Chapter 11 estate?

10     (No verbal response)

11     THE COURT:  Okay.  Hearing nothing, I, as I said,

12  Attorney Bassett, I'm holding the order.  I haven't read it

13  thoroughly without you and I talking while I'm reading it,

14  but I mean, it looks fine to me.  I asked the questions that

15  I had regarding the order.  I don't have any other questions,

16  so I assume that this order will enter.

17     The motion is granted, insofar as it's agreed to

18  that this agreed-upon order resolves the motion and the

19  objection and I don't see any reason why, as I'm sitting here

20  right now, that I would make any change to this order.  So

21  the motion is granted and the revised proposed order will

22  enter.

23     MR. BASSETT:  Thank you, Your Honor.

24     THE COURT:  Okay.  Thank you.

25     And that was filed in both, the adversary and the

1  main case, so that takes care of the first two matters on the

2  calendar.  So then, we're turning -- just give me one moment,

3  please.

4          (Pause)

5          THE COURT:  So in the Despins v Ace Decade

6  Holdings case, we have a pretrial conference that was

7  scheduled routinely by the Clerk's Office in connection with

8  the issuance of the summons in the adversary and then we have

9  the motion to dismiss on behalf of Yvette Wang.

10         I don't know that we really need to have a

11 pretrial conference, *per se*, since we're addressing the

12 motion to dismiss, but Attorney Bassett or Attorney Linsey or

13 Trustee Despins, do you have a different view of that?

14         MR. BASSETT:  No, Your Honor.

15         Other than that after we have the argument on the

16 motion to dismiss, the trustee may want to update the

17 Court --

18         THE COURT:  That's fine.

19         MR. BASSETT:  -- as to certain ongoing proceedings

20 in the United Kingdom that relate to this adversary

21 proceeding.

22         THE COURT:  Okay.  Then let's turn to the motion

23 to dismiss.

24         Attorney Macco, would you -- it's your motion.

25 Please proceed.

1          MR. MACCO:  Good afternoon, Your Honor.

2          We're here on the Defendant Yvette Wang's motion

3   to dismiss the adversary proceeding, particularly the fifth

4   and sixth claims of reef as they are against Defendant Wang.

5   My motion, I'm confident on the papers.  I'm happy to go into

6   further detail, but, specifically, as to the findings that

7   the property in question was property of the estate, the

8   complaint is devoid of any details related to whether that

9   motion, the order itself, was ever served upon Ms. Wang or

10  competent counsel at the time entitled to receive notice.

11          Further, to the extent that that order may be

12  binding that that there was a finding that this was property

13  of the estate, the transfer of the stocks was not willful in

14  as much that Defendant Wang was not aware of the order,

15  because, again, it was never served or provided to the

16  Defendant or her counsel at that time.

17          Counseling referenced in the complaint, Alex

18  Lipman did not appear in this matter.  He had not appeared in

19  the criminal matters that had not started at that time.  He

20  represented Ms. Wang in a separate criminal matter, which was

21  not part of the Ho Wan Kwok Enterprise, as it's been

22  referenced in the other matters.  So I believe that the

23  complaint, on its face, devoid of factual allegations in

24  order to find a holding that Ms. Wang should be sanctions or

25  damages related to this transfer.

1          As specifically set forth in the motion, and I'll

2   go into as much detail as the Court likes, but --

3          THE COURT:  Well, it's your motion, so you go into

4   as much detail as you like.

5          MR. MACCO:  Understood, Your Honor.

6          The motion itself was a motion for contempt of

7   Court as against the debtor.  The debtor is not the Defendant

8   and the Defendant was not served with that motion.  The

9   finding in there, as it relates to the Defendant's interest

10  in property would violate the Constitution if it took her

11  property without proper notice and an opportunity to be heard

12  on that.  So --

13         THE COURT:  What property?

14         MR. MACCO:  Property being a share of stock that

15  was subsequently transferred, which is the basis of this

16  adversary proceeding.

17         THE COURT:  So she's claiming it's her property?

18         MR. MACCO:  The property that's referenced, it was

19  certainly her property.  It was titled in her name in the

20  British Virgin Islands, as I'm sure the trustee is aware

21  based on his discovery from Trident, the agent for Ace

22  Decade, as he has referenced in that matter.  That is a

23  titled asset; it is not a bearer asset.

24         For a finding that this was actually property of

25  another entity, the debtor in this matter, there would have

1   to be some notice to the actual owner of that property, the

2   Defendant, Ms. Wang.  There was no notice to Ms. Wang and,

3   therefore, there could be no determination that it was not

4   her property, as to her.

5           For the findings as to contempt, that finding

6   should -- is fine.  It's valid.  It has no issues here, but

7   that was against the debtor and the debtor defended that

8   motion.  He appeared in that motion.  He was served with that

9   motion for contempt.

10          The Defendant Ms. Wang was not, was not granted

11  due process related to it, and, therefore, was not bound by

12  the findings in that order.

13          THE COURT:  Well, you just said it wasn't contempt

14  as against her, so why would she need due process?

15          MR. MACCO:  Because the trustee is using the

16  findings of that order, specifically, the findings that the

17  share -- that Ace Decade was an entity that belonged to the

18  debtor, as a finding against Ms. Wang in this adversary

19  proceeding.

20          THE COURT:  Isn't there evidence that the British

21  Virgin Islands company was served?  Wasn't she the director

22  of it?

23          MR. MACCO:  Ms. Wang was a director of the British

24  Virgin Islands company.

25          THE COURT:  Isn't there evidence that the British

1   Virgin Islands companies were served?

2           MR. MACCO:  Your Honor, I'm not aware of that

3   evidence.

4           THE COURT:  Shouldn't you know that?  I mean,

5   you're coming in and saying that her due process rights have

6   been violated.  She didn't know.

7           But she was acting in her capacity.  She didn't

8   personally own the share, right?  She didn't own the share

9   personally as Yvette Wang; she owned it as -- the company

10  entity owned it and she was the director of it.

11          MR. MACCO:  She owned the share personally, Your

12  Honor.

13          THE COURT:  Personally, when?

14          MR. MACCO:  She did own it.

15          THE COURT:  When did she own the share personally?

16          MR. MACCO:  I believe it was in early 2022,

17  into '23 and then the transfer occurred.

18          THE COURT:  So post-petition?

19          MR. MACCO:  She owned the share of stock

20  prepetition and post-petition.

21          THE COURT:  Okay.

22          MR. MACCO:  She was always the owner of the share

23  of stock personally.

24          THE COURT:  She was listed on the debtors'

25  schedules as a creditor and served with things in this case

1   in the main case; isn't that correct?

2          MR. MACCO:  She may have been.  There was some

3   question at that time as to the debtors' address -- sorry --

4   to the Defendant's address as related to the Defendant's

5   security concerns.

6          It's my understanding that at the time of this

7   motion, the trustee --

8          THE COURT:  At the time of which motion?

9          MR. MACCO:  The motion -- the contempt motion --

10  sorry -- the contempt motion against the debtor, the trustee

11  was not aware of Defendant Wang's address and could not serve

12  her.  Part of the finding in that contempt motion was that

13  the debtor was obligated to find Ms. Wang and provide her

14  with a copy of that motion, a finding which the Court later

15  said was insufficient because the debtor had not provided

16  sufficient evidence that that order had actually been turned

17  over to Ms. Wang.  That was on the subsequent, the final

18  contempt motion, not the partial resolution order.

19         So, although Ms. Wang was listed as a creditor, it

20  is not evident that Ms. Wang was ever served with matters

21  going forward and that's why there was a derivative in the

22  partial resolution order for the debtor to serve Ms. Wang --

23         THE COURT:  The partial resolution had to do with

24  the corporate -- I'm not sure you're mixing up two things

25  here.

1           MR. MACCO:  I apologize, Your Honor.

2           THE COURT:  Wasn't one of them about -- well,

3    anyway, keep going.  I'm not sure you're accurate on that.

4           There was a corporate governance order --

5           MR. MACCO:  Corporate governance order, correct.

6           THE COURT:  -- that's what, which there was a

7    partial resolution.

8           MR. MACCO:  There was a corporate governance order

9    entered on -- I apologize for the delay, Your Honor -- the

10   corporate governance order was entered in August of 2022.  In

11   October of 2022, the trustee brought a contempt motion for

12   the debtors' alleged failure to comply with the corporate

13   governance order.

14          Subsequently, in of -- November 17th, 2022, a

15   partial resolution order resolving the contempt motion was

16   entered by the Court.  That order included a finding that Ace

17   Decade was property of the debtor.  That was a contempt

18   motion filed against the debtor, not against the Defendant.

19   The language of that order directed the debtor to find and

20   deliver a copy of that order to the Defendant, Ms. Wang.

21   That was later found in the contempt order resolving the

22   remainder of the motion entered in January 24th, 2023, to

23   have not been complied with.

24          So the Court, by its own terms, in the language of

25   the contempt order from early 2023, found that Ms. Wang had

1  not been served with the partial resolution order or that

2  insufficient evidence --

3  　　　　　THE COURT:  I don't think that's accurate, but

4  that's okay.  You can make the argument.

5  　　　　　MR. MACCO:  I apologize, Your Honor.

6  　　　　　I thought that the language of the contempt order,

7  specifically, paragraphs 5 through 8, said the debtor did not

8  officially establish that --

9  　　　　　THE COURT:  Tell me the order -- give me the -- if

10 you would, it would be helpful for me to -- tell me what ECF

11 number is at the top of the order that you're reading it

12 from.

13 　　　　　MR. MACCO:  I apologize, I do not have the ECF

14 orders in front of me.  I have the dates listed.

15 　　　　　THE COURT:  All right.  What's the date?

16 　　　　　MR. MACCO:  The date for the contempt --

17 　　　　　MR. BASSETT:  Your Honor, the partial resolution

18 order is at ECF 1110 in the main case.

19 　　　　　The order I'm reading from is the contempt order,

20 which was entered January 24th, 2023.

21 　　　　　THE COURT:  All right.  Well, let's take them in

22 order.

23 　　　　　MR. MACCO:  Okay.

24 　　　　　THE COURT:  Let's take the orders in order.

25 　　　　　So, what's the first one, Mr. Bassett?  1101?

1          MR. BASSETT:  1110.

2          THE COURT:  1110.  All right.  Order regarding

3   partial resolution of trustee's contempt motion, November 17,

4   2022, ECF Number 1110.

5          Holding Ho Wan Kwok, the debtor, in civil contempt

6   for failure to comply with the corporate governance rights

7   order and imposing appropriate sanctions.  And upon evidence

8   presented, including a transcript of the April 6th, 2022,

9   meeting of creditors under Section 341, the particular of

10  claims -- oh, yes, now, this is bringing back some memories.

11         So, isn't the particular of claims in the U.K.

12  filed where Mr. Kwok says he owns Ace Decade; isn't that what

13  that was?

14         MR. DESPINS:  Yes.

15         THE COURT:  Yeah, I think that's where -- you

16  might want to look at that, counsel.

17         And it's ordered that the Court finds that the

18  debtor exclusively beneficially owned and controlled Ace

19  Decade Holdings, Ltd. on February 15, 2022, petition date,

20  and maintained such exclusive beneficial ownership and

21  control, up to and immediately prior to the date of the

22  trustee's appointment.  And that Dawn State, together with

23  Ace Decade, the Ace Decade's entities is -- the Ace Decade

24  wholly-owned subsidiary and is exclusively owned and

25  controlled by Ace Decade.

1           For the avoidance of doubt, Yvette Yanping Wang,

2   is not, and has never been a beneficial owner of the shares

3   in Dawn State.  The debtor does not contest these findings in

4   this paragraph and will not appeal such.

5           While I have an absolute visual recollection of

6   this hearing right now, of Mr. Henzy (phonetic), standing

7   right where you are and saying that he would not contest the

8   findings and would not appeal the findings.  So, it says

9   that -- that's what it says, okay.  The debtor has --

10  represents he's never transferred or purported to transfer

11  ownership of Ace Decade to any other person or entity since

12  the petition date.

13          And remember, I think, actually, and Mr. Bassett,

14  I'm sure, will confirm or correct me if I'm wrong, but the

15  reason the 341 meeting testimony is mentioned in this order

16  is because Mr. Kwok testified he owned Ace Decade at the 341

17  meeting; isn't that correct, Mr. Bassett?

18          MR. BASSETT:  That's correct, Your Honor.

19          THE COURT:  Okay.  So that's where you have to

20  start, okay.  That's where you have to start.

21          So it goes on and it says -- and what was going on

22  at the time was the trustee was trying to get the Ace Decade

23  shares into his name as the representative of the debtors'

24  estate, who the debtor had already testified he owned, and

25  that his lawyers in this bankruptcy case said, they're not

 1  going to contest the findings that he never transferred or

 2  purported to transfer any ownership or control of Ace Decade

 3  to any other person or entity since the petition date.

 4          So, I think that's part of your problem, right, is

 5  this order.  And it says:

 6          The debtor stipulates to the admissibility of

 7  Trustee Exhibit 13 on the issue between -- of the

 8  relationship between the debtor and Yvette Wang.

 9          MR. MACCO:  But, Your Honor, the debtor is

10  stipulating to these matters, not the defendant in this

11  matter, Yvette Wang.

12          THE COURT:  I understand all that, counsel.

13          MR. MACCO:  I apologize for interrupting you, Your

14  Honor.

15          THE COURT:  No, I understand what you're saying,

16  but she testified in this case.  She was deposed before the

17  shares of the stock were transferred to whomever they're

18  transferred to now.  She knew what was going on in this case.

19  She was working for the debtor.

20          MR. MACCO:  Your Honor, regardless of her

21  knowledge of what was going on -- whether she had knowledge

22  or did not have knowledge of the specifics of (indiscernible)

23  this case, the language of the partial resolution order,

24  specifically, the findings that the debtor stipulates to,

25  can't be binding on Ms. Wang as a third party.

1              THE COURT:  Where does it say anywhere that this

2     had to be served on Yvette Wang?  I don't see that.

3              MR. MACCO:  I believe -- well, that order, the

4     debtor was directed to serve a letter, I believe --

5              THE COURT:  No, not this order.  That doesn't say

6     that.  This order doesn't say that.

7              You're talking about a letter that the trustee had

8     asked counsel to sign and file and he wouldn't do it.  But

9     then he sent -- Mr. Kwok sent some letter that said the

10    trustee thinks I have an interest in this and, you know --

11    anyway, I recall what happened.

12             There's nothing in this order here.  I don't see

13    where it says that this order had to be served on Yvette

14    Wang.  So, with regard to the November 17th order, that

15    argument about it, you know, not being served on her, okay,

16    I'm not finding that persuasive.

17             So what's the next order?

18             MR. MACCO:  Just one more quick matter on that.

19             Whether it directed her to be served, it did have

20    an effect on her interest in property and in order for her to

21    have due process under the law --

22             THE COURT:  What interest did she have in the

23    property at the time of the filing?

24             MR. MACCO:  She had an ownership interest in Ace

25    Decade, a personal ownership in the (indiscernible).

1        THE COURT:  Well, that's not what Mr. Kwok said.

2        MR. MACCO:  I understand that, but I -- you know,

3  Mr. Kwok --

4        THE COURT:  So, why isn't she challenging, then,

5  what Mr. Kwok said?

6        MR. MACCO:  Your Honor --

7        THE COURT:  She -- he testified at a 341 meeting

8  and he wrote -- he put in a -- she was the -- an officer or

9  director of Ace Decade, right?

10        MR. MACCO:  Correct, Your Honor.

11        THE COURT:  So she's saying he's lying?

12        MR. MACCO:  Your Honor, without going into --

13  without testifying on behalf of my client, because it would

14  be inappropriate in this matter, Ms. Kwok -- Ms. Wang

15  believes that there was some confusion about the ownership

16  interests in Ace Decade at the time of the testimony.

17        THE COURT:  Well, what would be the confusion?

18  She was an officer and director so if there was confusion,

19  why didn't she fix it?

20        MR. MACCO:  Ms. Wang asserts, or I believe she

21  will assert, that this ownership interest in Ace Decade was

22  never actually held in the name of Mr. Kwok.  I think there

23  was some confusion on the testimony, which will certainly be

24  flushed out later in the adversary proceeding.

25        THE COURT:  Well, this doesn't say it was in his

1  name.   That's not what this order says.

2          MR. MACCO:  It says he's the beneficial owner.

3          THE COURT:  It says he exclusively and

4  beneficially owned and controlled Ace Decade.  They never

5  said it was in his name.  There's a difference.

6          MR. MACCO:  Understood, Your Honor.

7          Moving on then to the --

8          THE COURT:  What's the next order you want me to

9  look at?

10         MR. MACCO:  The contempt order, which is

11 January 24th, 2023.

12         THE COURT:  Okay.  Hold on a minute.  I'll find

13 it.

14         MR. MACCO:  And, specifically, paragraphs 5

15 through 8.

16         THE COURT:  You've got to give me a minute to get

17 to the docket number.

18         What?

19         UNIDENTIFIED SPEAKER:  Right there.

20         THE COURT:  Okay.  Thank you.

21         1572.  An order granting motion to hold debtor in

22 contempt of corporate governance order, January 24, 2023.  So

23 you want me to go to -- well, let me read it, the

24 introduction and background first before we get to the

25 paragraphs that you're talking about.

1          (Pause)

2          THE COURT:  So, it says, starting on page 3 of the

3    order, findings of fact.  The Court has already made the

4    findings of fact contained in the paragraphs 1 and 2 below,

5    as set forth in the partial resolution order, the first

6    being, the debtor exclusively beneficially owned and

7    controlled Ace Decade on February 15, 2022, petition date,

8    and maintained exclusive beneficial ownership and control up

9    to, and including, and mainly prior to the date of the

10   trustee's appointment.  All what I've already read, okay.

11         For the avoidance of doubt, Yvette Wang, here and

12   after, Ms. Wang, is not, and never had been a beneficial

13   owner of shares in Ace Decade or Dawn State.  And then that

14   references Trustee Exhibits 6 and 7, 10 and 15 that were

15   introduced in the November evidentiary hearing that included

16   excerpts from depositions.

17         MR. MACCO:  So, Your Honor, assuming that the

18   partial resolution order found that Ms. Wang was the owner of

19   this property, there is no evidence that Ms. Wang would then

20   be on subsequent notice of the automatic stay without being

21   provided some sort of notice.  The findings --

22         THE COURT:  What do you mean being provided some

23   sort of notice?

24         MR. MACCO:  There's a finding that property that

25   was titled in her name, the share of stock, was property of

1    the debtors' bankruptcy estate; that was made in the partial

2    resolution order.  Assuming that's adopted for the purposes

3    of this adversary proceeding against Ms. Wang, there must

4    also be a showing that Ms. Wang made a willful violation of

5    the bankruptcy stay before she can be held liable for

6    sanctions or damages.

7              THE COURT:  Well, that's damages.  That's not

8    necessarily sanctions.  There's two different steps in that

9    provision of the Code.

10              MR. MACCO:  I apologize, Your Honor.

11              THE COURT:  You might be right about damages and

12    you might be right about certain damages, but just because

13    she -- I don't have to find somebody acted willfully to say

14    that they violated the automatic stay.

15              MR. MACCO:  Absolutely not.

16              The willful definition really indicates that there

17    was knowledge of the automatic stay.  That's the case law.

18              THE COURT:  Well, I'm not sure that's exactly

19    true, but that's fine.

20              MR. MACCO:  I apologize, that's my understanding.

21              THE COURT:  So, what's your point?

22              So you're saying, at least, what sounds to me what

23    you're saying is, I can't -- I might not be able to have her

24    pay damages, if I can't find that she acted willfully.

25              Is that our point?

1          MR. MACCO:  Correct.  And she --

2          THE COURT:  But that doesn't mean that I can't

3    find that she's not -- I could still find she's in violation

4    of the automatic stay.  People can be violation of the

5    automatic stay even if they don't know about a bankruptcy

6    case.

7          MR. MACCO:  Certainly understood, Your Honor.

8          And whether or not this transfer is avoidable is

9    not the issue in the adversary proceeding as against

10   Ms. Wang.  It's whether they -- the trustee is entitled to

11   sanctions and damages against Ms. Wang as the transferor and,

12   therefore, knowledge of the bankruptcy automatic stay must

13   come into play to a certain extent.

14         The finding in the contempt order --

15         THE COURT:  Yeah, but not to a full extent.

16         MR. MACCO:  The finding in the contempt order

17   finds that there was not sufficient evidence that Mr. Kwok

18   ever delivered the letter advising Ms. Wang of the partial

19   resolution order or did not do anything with the stocks to

20   Ms. Wang.

21         THE COURT:  I don't think the letter had nothing

22   to do with the partial resolution order at all.  That's my

23   recollection.  My recollection is that Mr. Despins was trying

24   to come up with a solution and I think there was a discussion

25   on the record with Mr. Kwok's counsel about a letter being

1   sent United Kingdom to address this issue.

2          The letter -- where I'm having a little difficulty

3   is I don't think the two are connected at all.  Partial

4   resolution was with regard to the corporate governance order.

5          With regard to what was going on in -- in the

6   United Kingdom in an action that Mr. Kwok commenced with Ace

7   Decade and Dawn State as the Plaintiffs is my recollection,

8   or whatever -- and maybe they're not called "Plaintiffs" --

9   Petitioners, he said under oath, that he owned Ace Decade.

10  So, I don't think you're -- I don't think that's correct that

11  they're connected, okay.

12          MR. MACCO:  Understood, Your Honor.

13          THE COURT:  So what's your point?

14          MR. MACCO:  Just for clarification, Ms. Wang is in

15  the United Kingdom.  There's litigation ongoing in the United

16  Kingdom regarding Ace Decade, but Ms. Wang currently sits at

17  MDC in Brooklyn.  She was located in New York, I believe, at

18  all relevant times before this.  So the letter sent to the

19  United Kingdom, I'm not sure, is the letter referenced by the

20  contempt order, but that was my understanding and I apologize

21  if that's incorrect.

22          Your Honor, just to wrap this up, and I apologize

23  for taking too much of the Court's time.

24          THE COURT:  No, that's what we're here for; we're

25  here for this hearing.

1        MR. MACCO:  I think there must be some finding

2  that Ms. Wang was, A, on notice of the automatic stay in

3  order to find damages in this matter and potentially

4  sanctions.  Secondly, I don't believe that the partial

5  resolution order, to the extent it attempts to bind Ms. Wang

6  for the purposes that Ace Decade, the share of Ace Decade was

7  property of the debtors' estate, was properly served on

8  Ms. Wang in order for her to appear, defend, or otherwise be

9  heard on this.  So I think the partial resolution order, to

10  the extent it attempts to take property of Ms. Wang without

11  giving her due process, violates the Constitution.

12        And then to the extent that the other matters, the

13  contempt order or the partial resolution order provided to

14  Ms. Wang, I don't think she had sufficient knowledge in order

15  to take a willful violation of the bankruptcy stay, whether

16  the transfer of such -- whether if the transfer of the share

17  of Ace Decade is determined to be a violation of the

18  bankruptcy stay.

19        I have nothing further, Your Honor.

20        THE COURT:  Okay.  Thank you.

21        Attorney Bassett?

22        MR. BASSETT:  Your Honor, may I use the podium?

23        THE COURT:  Certainly.

24        MR. BASSETT:  Thank you.

25        Again, for the record, Nick Bassett from Paul

1 Hastings on behalf of the Chapter 11 Trustee.

2        Your Honor, we often jump into arguments in the

3 middle of substance and I think in this case, it's helpful to

4 take one step back and just give the Court the kind of lay of

5 the land or history as far as what this complaint seeks.

6 And, frankly, you know, as you look at this complaint at

7 issue in this adversary proceeding, as far as this Chapter 11

8 case is concerned, this complaint is about as simple as

9 you're going to find compared to the complexity of many of

10 the other complaints that the trustee has brought.

11        It's really this simple.  On November 17th, 2022,

12 this Court entered the partial resolution order, which we

13 just went through, very clearly finding that Ace Decade, the

14 ownership of Ace Decade is property of the estate and, also,

15 that it was never, and is not property of Defendant Yvette

16 Wang.

17        Then, less than two months later, on January 3rd,

18 2023, the Defendants, both Defendant Wang and the other

19 Defendant who was the transferee, violated the automatic stay

20 by causing Yvette Wang's ownership, purported nominal

21 ownership of Ace Decade to be transferred to Defendant Hao

22 (phonetic) in Switzerland.

23        Based on those simple facts, the trustee seeks in

24 the complaint -- he has three causes of action.  The first

25 seeks a declaration that the transfer of the share is void *ab*

1   *initio* as a violation of the automatic stay.  The second

2   seeks damages against both Defendants for violation of the

3   automatic stay under Section 362(k) of the Bankruptcy Code.

4   And the third cause of action seeks sanctions, including

5   punitive damages from the Defendants for that same violation

6   of the automatic stay.

7           Now, an adversary proceeding based on these simple

8   facts should be able to be resolved quickly in this court.

9   It seems apparent to us that Defendant Wang does not want

10   that to happen, hence the filing of the motion to dismiss

11   before the Court today, which as I see it, can really only be

12   viewed as a delay tactic.  Because I think it's very clear

13   that none of the arguments have any merit and it's very clear

14   that none of the arguments being made are really proper

15   arguments to raise on a motion to dismiss where the only

16   issue is whether the trustee has melt his minimal pleading

17   burden, and he has easily done so.

18           Now, I want first want to point out that the

19   motion to dismiss, and I think the Court sort of acknowledged

20   this, but the motion to dismiss does not even take issue with

21   the first cause of action in the complaint.  So Defendant

22   Wang is not arguing that there was no violation of the

23   automatic stay here and therefore, she's not seeking

24   dismissal of the cause of action that seeks a declaration

25   that the transfer is void *ab initio*.  She's only seeking

1  dismissal of the other two counts, which seek damages or

2  sanctions against her.  So regardless of the outcome of this

3  motion to dismiss, that count, which is sort of the principal

4  claim at issue, making sure that there's a finding that the

5  transfer is void, that goes forward.

6           Defendant Wang only seeks dismissal of Counts 2

7  and 3 of the complaint, as I said, and these are -- all the

8  arguments they make do not actually identify any claim

9  deficiencies and, at best, could raise issues of fact

10 charitably, that could be considered as the litigation moves

11 forward.  The issue that the Court has heard about, and

12 really, which is at the heart of the Defendant's argument, is

13 whether or not Defendant Wang had notice of the finding of

14 the Court that the Ace Decade share is property of the

15 estate.

16          And what she argues is that there is no

17 allegations in the complaint that the share is property of

18 the estate.  That's obviously contradicted by the plain

19 allegations in the complaint, which refer to and discuss in

20 detail, the partial resolution order and its findings that,

21 as I said before, the Ace Decade is property of the estate

22 and is not property of Defendant Wang.

23          She then argues, though, that that order is

24 somehow not valid because she was not on notice of it prior

25 to its entry.  That's both legally irrelevant and factually

1    false.  It's legally irrelevant because as we argue in our

2    papers, there is no requirement that everyone in the world be

3    on notice of a finding of the Court that property is property

4    of the estate for them to be bound by that order.  And were

5    that the law, it would be completely unworkable and would

6    lead to absurd results and a Chapter 11 process that simply

7    would not function correctly.

8            One of the cases that we cite in our opposition to

9    the motion to dismiss is the, In re Motors Liquidation

10   Company case.  It's an SDNY case from 2018, affirmed by the

11   Second Circuit which talks about how the law of the case

12   doctrine applies in bankruptcy cases across adversary

13   proceedings and contested matters.  There, the Court said:

14           "The law of the case doctrine does not turn on

15   whether all parties to a proceeding participated in the

16   earlier resolution of a legal issue.  And the Bankruptcy

17   Court was not required to revisit anew, the same question

18   each time a new party joined the bankruptcy proceedings."

19           That's the law and it makes good sense because,

20   otherwise, it would be unworkable to retry issues every time

21   a new party tried to come in and revisit a past order of the

22   Court.

23           But as I said, Your Honor, it's also a factually

24   erroneous argument when you look at the allegations of the

25   complaint and the history of this case.  First of all, just

1  to sort of point out the elephant in the room, what you don't

2  hear counsel saying is that Defendant Wang did not, in fact,

3  have notice of the partial resolution order and the automatic

4  stay.  I would submit that, of course, she did and the

5  complaint and the circumstances surrounding and of which the

6  Court can take judicial notice in this case, make that

7  abundantly clear.

8         First of all, paragraph 38 of the complaint --

9  and, by the way, when we're talking about a motion to

10  dismiss, Your Honor, you obviously have to take a step back

11  and remember the standard that we're dealing with.  Under

12  Iqbal, the standard is, has the trustee sufficiently alleged

13  allegations to render it plausible that he's entitled to

14  relief on his claims in the complaint?

15         And all that's necessary for that to be the case

16  is for the allegations of the complaint to allow the Court to

17  infer the existence of the facts necessary to prove --

18  necessary for the Plaintiff to prove.  And here, we have

19  readily met that standard for numerous reasons.  First of

20  all, paragraph 38 of the complaint expressly alleges, point-

21  blank, that Defendant Wang's conduct in causing the Ace

22  Decade transfer was intentional and that she had prior

23  knowledge of the automatic stay at the time.  That alone is

24  enough.

25         Defendant Wang complains that we haven't alleged

1   details surrounding her notice.  Not necessary to do so to

2   satisfy our pleading burden, but we have done so anyway.

3   Specifically, we have alleged that on November 15th, 2023,

4   counsel to the trustee emailed a copy of the proposed form of

5   partial resolution order to Mr. Alex Lipman, who the trustee

6   understands acted as counsel for Wang at a prior point in

7   time or at that time, even.

8          Now, counsel has said that Mr. Lipman was counsel

9   for Ms. Wang in an unrelated criminal matter.  Even if that's

10  the case, I would submit that under that basis of the

11  allegation alone, it is at the very least, plausible that

12  Ms. Wang came to have notice of the partial resolution order

13  through somebody who either, at the time or previously, had

14  acted as her counsel.

15         But in addition to that, and this is what the

16  Court mentioned, and which Defendant Wang does not even

17  mention in her motion to dismiss or her reply brief, in which

18  counsel was not familiar with, we specifically allege in the

19  complaint that on November 16th, 2022, counsel to the trustee

20  served a copy of the partial resolution order on Ace Decade,

21  care of Trident Trust Company, its registered agent in the

22  BVI.

23         Now, Defendant Wang claims to be the both, nominal

24  and beneficial owner of Ace Decade.  If she is, in fact, the

25  owner of Ace Decade, she absolutely would have gotten notice

1  by virtue of the fact that we served the registered agent for

2  that company in the BVI.  At the very least, it have well

3  more than plausible that she had notice as a result of that

4  service.

5       In addition to those allegations, Your Honor, we

6  have, of course, the factual backdrop of this case.  As the

7  Court acknowledged earlier, Ms. Wang is certainly no stranger

8  to the Chapter 11 case.  She was deposed in connection with

9  the DIP financing motion back, I believe, in April of 2022,

10 where she served as a representative for Golden Spring.

11 Obviously, anybody who sits for a deposition in a bankruptcy

12 case is aware of the bankruptcy case's existence.

13      The last thing I want to note, Your Honor, is that

14 now there's both, in the comments counsel made today and the

15 motion to dismiss, there are statements made to the effect

16 of, well, Ms. Wang was not served with the motion for

17 contempt, which ultimately led to the partial resolution

18 order.  And she should have been served with that is the

19 implication.  But that sort of belies and ignores the history

20 surrounding the filing of the contempt motion and what had

21 been told to the trustee at that time.

22      Prior to the trustee's filing of the motion, and,

23 in fact, up until I think days before the hearing on the

24 motion, the debtor, as the Court acknowledged, based on his

25 filings in the United Kingdom, had stated under oath that he

1   was the owner of Ace Decade.  But more than that, and which

2   counsel didn't knowledge, Defendant Yvette Wang signed the

3   particulars of claim form filed in the United Kingdom, which

4   contained that statement.  It was not until the eve of the

5   hearing on the contempt motion that all of a sudden the

6   debtor in an obvious attempt to avoid the trustee getting

7   control over the Ace Decade share, said that, Oh, no, my

8   employee/assistant, now criminal co-defendant, Yvette Wang,

9   is the actual owner of the share.

10          So, we could not have, and had no reason to serve

11  her with a contempt motion, or as counsel suggests in their

12  brief, file an adversary proceeding to get ownership of the

13  share.  That was completely unnecessary, because it had been

14  represented to us by both, the debtor and Defendant Yvette

15  Wang that the Debtor owned the share.

16          So, Your Honor, for all these reasons, we think

17  it's very clear that none of the arguments raised in the

18  motion to dismiss have merit.  They don't actually identify

19  any legitimate pleading deficiency in the trustee's complaint

20  and therefore, we would ask that the motion to dismiss be

21  denied.  Thank you.

22          THE COURT:  Thank you.

23          Counsel, any response?

24          MR. MACCO:  Briefly, Your Honor.

25          There was some question as to when that email to

1   Alex Lipman was sent.  Counsel to the trustee just indicated

2   that it was sent in November of 2023, as of the pleading.

3   This is well after --

4            MR. BASSETT:  I meant November '22, Your Honor.

5   That was my mistake.

6            MR. MACCO:  Your Honor, but the pleading does say

7   November '23, which raises separate issues, other and apart

8   from that.

9            As to the indication that we don't need to

10  relitigate matters as parties become aware of proceedings,

11  while that's certainly true, the only party that should be on

12  notice, and not every party on notice, the party that may

13  hold an ownership interest, which may be determined by the

14  Court.

15           Further, and finally, whether or not -- not

16  finally -- furthermore, in response to the trustee's

17  allegations that the Defendant should have made some

18  allegation that she wasn't on notice, specifically, that's

19  inappropriate for this type of motion and couldn't be

20  considered because it would be outside the record anyway.

21           THE COURT:  Well, let's step back and see what is

22  appropriate.

23           This is a motion to dismiss for failure to state a

24  claim upon which relief can be granted, correct?

25           MR. MACCO:  Correct.

1          THE COURT:  So the standard is I have to accept

2    all the allegations as true, right?

3          MR. MACCO:  Correct, Your Honor.

4          THE COURT:  So how -- I'd like you to tell me, and

5    first, I did review your motion and you don't contest -- you

6    say a few things.  You don't move to dismiss Count 1, but you

7    move to dismiss Counts 2 and 3, and then you're proposed

8    order -- and there's more than counts -- there's more than

9    three counts in the complaint is my recollection, as well.

10   And then you ask the Court to grant the motion as to 2 and 3

11   and then dismiss the complaint in its entirety.

12          I don't know how I could possibly do that.

13          MR. MACCO:  Your Honor, I believe it says

14   dismiss -- and if not, that's addressing our dismiss the

15   complaint in its entirety as against Ms. Wang.  The

16   complaints to avoid the transfer against the recipient of the

17   transfer, Mr. Hao or Hao.

18          THE COURT:  Well, that's not what your proposed

19   order says.  But in any event --

20          MR. MACCO:  Well, I apologize.  That's a

21   typographical error.

22          THE COURT:  What you haven't answered -- you keep

23   saying the trustee hasn't established.  The trustee doesn't

24   have to establish anything.  He just has to plead.

25          So, how is the pleading not plausible?  Now is the

1  pleading, on its face, deficient when it asserts in Count 1

2  that the transfer is in violation of the automatic stay?  It

3  isn't just a recitation of the statute, which is one of the

4  reasons that motions to dismiss are granted, is because

5  somebody, you know, the pleader just puts forth a statute.

6       But he doesn't do that.  That's not what the

7  complaint does.  So how is it insufficiently pled?  And if

8  it's insufficiently pled, then why didn't you file a motion

9  for a more definite statement?  I mean, how is it

10 insufficiently pled?  I'm having difficulty seeing why your

11 motion should be granted.

12      You may be right at trial.  I don't know.  But

13 that's not where we are.  We're at the motion to dismiss

14 stage and I'm bound to find that all the allegations, as

15 pled, are true.  And you're saying he hasn't established.  He

16 doesn't have to establish anything.

17      So how is it deficient?  Tell me how it's

18 deficient, because I'm having troubles being persuaded by

19 your argument.

20      MR. MACCO:  Your Honor, without re-hashing it --

21      THE COURT:  Well, you have to re-hash it, because

22 I'm asking you to.

23      MR. MACCO:  When I say "establish," I meant "pled

24 with particularity," and I apologize for --

25      THE COURT:  Well, it doesn't have to be pled with

1  particularity.  It's not a Rule 9 issue.

2          If she had a share of stock and she transferred it

3  knowing there was a case and an automatic stay, that -- if

4  it's a violation of the automatic stay, that transfer is

5  void.  That's what the law says and that's what the complaint

6  says.

7          So how is it -- your job, your burden is to tell

8  me that the complaint does not state a claim upon which

9  relief can be granted, so how does it state a claim -- how

10  does it not state a claim upon which relief can be granted?

11          I'm not saying I'm going to grant it.  We haven't

12  gotten there.

13          MR. MACCO:  Your Honor, just -- it indicates that

14  she was on notice because of the emails to Alex Lipman.

15          THE COURT:  Well, it indicates she was on notice

16  because of a lot of reasons, not just because of the emails

17  to Alex Lipman.  She was -- Ace Decade was served with the

18  order that you keep talking about as the basis for her rights

19  not being properly protected, with regard to that share, even

20  though the company was served through its agent of service of

21  process in the BVI.  I recall all of that.  I mean, I don't

22  have it -- I can't tell you -- I can go through and find the

23  certificate of service, because we've looked at those things

24  already in this case, right.  There are -- those are issues

25  that have come up in this main case -- not in this adversary

1 proceeding -- but in this main case more than once.  There's

2 3,000-some-odd docket entries in the main case, counsel.

3 There's been a lot going on.

4       So what I'm saying to you is, it's not just about

5 an email to Alex Lipman, and even if it is, so what?  That's

6 a -- he's stating a claim upon which relief could be granted.

7 You might prove something different, but where does it say

8 anywhere under Rule 12(b)(6) where you say, well, he wasn't

9 her lawyer at the time.

10       Well, I don't have any evidence in front of me

11 either way on that.  This isn't evidentiary.  This is, does

12 it state a claim upon -- does this complaint -- and you

13 don't -- and you're not moving to dismiss Count 1.  Well,

14 Count 1 is the whole -- is that there's a violation of a

15 stay.

16       And if I have to accept the allegations as pled as

17 true in 2 and 3, then I don't know how you win.  I don't know

18 how you succeed on a motion to dismiss because Count 1 stays,

19 even if you were to win on 2 and 3.  Count 1 stays.  It's a

20 violation of the stay.

21       But on Counts 2 and 3, those are factual issues;

22 they're not legal issues.  You're raising issues of fact.

23 You're saying, Well, you can't find contempt because she

24 wasn't served with the motion.  You can't find this because

25 she didn't know about the automatic stay.

1           In order for me to agree with you, I'd have to

2  make findings of fact.  I don't have to make findings of fact

3  on a motion to dismiss.  That's the nice thing about it,

4  right?  I don't have to do that.

5           All I have to find is that the complaint, as pled,

6  states a claim upon which relief can be granted.  And I find

7  that it does.  And I'm not going to write some big decision

8  on it because there's no need.  I mean, there's no need for

9  me to write a long-winded decision on whether or not the

10  complaint states a claim upon which relief can be granted.

11           When you have a 12(b)(6) motion, you know, there

12  are things that you have to be able to argue on the law, that

13  there's nothing here.  Your law is she didn't have notice.

14  She wasn't bound by the -- Mr. Bassett has got law that says,

15  It doesn't matter whether she didn't have notice, because if

16  you're in violation of the stay, you're in violation of the

17  stay.  That's all there is to it.

18           Whether you get to the damages part, that might

19  be, but that's a factual inquiry.  You can't -- I can't make

20  that determination on a motion to dismiss.  I don't have any

21  facts, other than the facts as pled, and if I accept them all

22  as true, then your client could be responsible for damages.

23           So, that's why I asked you.  If there's something

24  else you want to tell me, please tell me, but I just don't

25  see it.  I don't see how this motion to dismiss should be

1  granted; in fact, I feel it should be denied.  But I'm giving

2  you your opportunity to make whatever remaining arguments you

3  want to make.  But it's very clear you haven't moved to

4  dismiss the first count on which the other counts are

5  predicated.  So I just -- I don't understand that.

6              MR. MACCO:  I have nothing further, Your Honor.

7              THE COURT:  Okay.  Thank you.

8              Anything further, Mr. Bassett?

9              MR. BASSETT:  Not from me, Your Honor.

10             THE COURT:  Okay.

11             MR. BASSETT:  But the trustee, I believe --

12             THE COURT:  Yeah, I'll -- I just want to make it

13 clear for the record.  I've reviewed the motion to dismiss.

14 I reviewed the response of the trustee and objection to the

15 motion to dismiss.  I've reviewed the reply from the

16 Plaintiff -- excuse me -- from the Defendant to the trustee's

17 opposition to the motion to dismiss.

18             Under Federal Rule of Civil Procedure 12(b), that

19 is applicable in adversary proceedings under Rule 7012, the

20 standard that the Court must apply in determining a motion to

21 dismiss under 12(b) is whether or not the complaint states a

22 plausible cause of action upon which relief can be granted.

23             For the reasons set forth in the trustee's

24 opposition and for what I've reviewed in this case as a

25 whole -- not just this adversary proceeding -- and case law

1  that applies to motions to dismiss, the claims in Counts 2

2  and 3, which are the only counts that are the subject of the

3  motion to dismiss, state a claim upon which relief can be

4  granted.

5          As I've stated to counsel for the Defendant, the

6  moving party, that doesn't mean we've had a trial.  We

7  haven't.  This is whether or not these causes of the

8  complaint survive and I find that they do.  And it's too late

9  under the Rules to file a motion for a more definite

10  statement, because you would have had to file that before you

11  filed a motion to dismiss and you didn't do that, so now

12  you're going to have to file an answer.

13          So the motion to dismiss is denied for the reasons

14  stated on the record and under the general rules of pleading,

15  I think you only have 14 days to answer.  I mean, I'll look

16  again, but I think that's how things progress.

17          Oh, I'm looking at the wrong thing.  So give me a

18  second and I'll look.

19      (Pause)

20          THE COURT:  If the Court denies the motion -- this

21  is 7000(12)(a) -- if the Court denies the motion or postpones

22  its disposition until the trial, the responsive pleadings

23  shall be served within 14 days after notice of the Court's

24  action.  So, there, yes.

25          So I'm going to enter some form of an order;

1  probably, counsel, a virtual order, saying something like,

2  "Order denying motion to dismiss" and say there was a hearing

3  held today.  I've reviewed your papers, which I did.  I

4  reviewed trustee's counsel's paper, which I did.  I listened

5  to your arguments.  I looked at the main Chapter 11 cases as

6  a whole and this adversary proceeding and I find that the

7  Counts 2 and 3 state a claim upon which relief could be

8  granted and, therefore, the motion to dismiss is denied.  And

9  then you have 14 days, okay.

10       Whether that gets entered this afternoon or

11  tomorrow morning, I don't know.  I can't say for sure, but

12  that's what will happen.

13       All right.  Do you have any questions?

14       MR. MACCO:  No, Your Honor.

15       THE COURT:  Okay.  Thank you.

16       All right.  Trustee Despins, Attorney Bassett

17  indicated you want to talk about matters relating to the case

18  as a whole and matters in the United Kingdom; is that right?

19       MR. DESPINS:  Yeah, it's related to this, but it's

20  not on the merits of the motion, itself.  But I just wanted

21  to give the Court -- because I'm not sure we've given you the

22  full picture.  I think we may have, but Ace Decade, as far as

23  we know at this stage, is just an entity that has -- that

24  owns another entity called Dawn State and these entities may

25  have claims against UBS.  This is what has been alleged in

1   the U.K. proceedings.

2            And we are in that position because Mr. Kwok also

3   asserted claims against UBS.  We basically have to get

4   involved in that litigation.  And the situation that we're

5   in, in the U.K. is that we filed a motion seeking a stay of

6   that proceeding on the basis that we need to get a -- we

7   believe that the Court here has already found that we own

8   those shares and we control that company, but there's

9   somebody in the U.K. appearing on behalf of Ace Decade

10  saying, No, somebody else controls Ace Decade and, therefore,

11  trustee, you don't speak on behalf of Ace Decade or Dawn

12  State.

13           So we've told the U.K. Court, please stay the UBS

14  proceeding until we have a final resolution of this issue,

15  and this is why we're -- this is why this adversary

16  proceeding was brought.  The reason I raise this is there are

17  timing issues here.  We obtained the six-month stay, which

18  expires on July 1st.  Now, we can seek extensions of that,

19  but, obviously, for us, you know, it's important to show

20  progress in the case and that's why we've been pushing this

21  as aggressively as we could, but I wanted to make sure Your

22  Honor was aware of the six-month stay that was granted --

23           THE COURT:  I don't think I was aware of that,

24  actually.

25           MR. DESPINS:  Okay.  So it --

1           THE COURT:  If I was, I don't recall it, so sorry.

2           MR. DESPINS:  So it expires on July 1st and,

3  obviously, we can seek an extension of that.

4           In the meantime, there are attempts to serve the

5  Swiss resident, you know, that's the recipient of the

6  transfer.

7           THE COURT:  Uh-huh.

8           MR. DESPINS:  Not so successful at this point.

9  It's a complicated process and we'll follow-up on that, but

10 that -- so that's ongoing, as well.  But I wanted to make

11 sure Your Honor knew because this puts us in a kind of

12 impossible position where UBS is saying, We're going to seek

13 costs against the Plaintiffs, because we believe this action

14 against UBS is without merit.

15          Okay.  We hear that, but we have no ability to

16 settle that claim because UBS will say, Oh, you want to

17 settle?  Okay.  Do you have the power to settle?

18          As well, I'm sure my Court would tell -- or our

19 Bankruptcy Court would tell you we have the power.

20          Yes, but we have these people showing up in the

21 U.K. saying, You don't have to power to do this.

22          That's why we need a resolution so that we can

23 fish or cut bait in that proceeding and move on.  And,

24 unfortunately, it's more complicated than it has to be

25 because the -- and, by the way, it's no accident that this

1  was transferred to somebody in Switzerland, because serving

2  people in Switzerland is the most complicated -- one of the

3  most complex jurisdictions to do that in -- and so that's

4  going to cause a delay, probably, et cetera, et cetera.

5          But I wanted to make sure Your Honor knew that in

6  the U.K., the posture is to tell the Court, There's no point

7  in proceeding with that litigation because there's a dispute

8  as to who owns the claim.  We think it's very clear who owns

9  the claim, but we need a final determination of that.

10          Thank you, Your Honor.

11          THE COURT:  Okay.  I understand.  Thank you.

12          So if the stay is in place until July, but it may

13  be extended, but you'd have to have UBS' agreement,

14  apparently; is that right?

15          MR. DESPINS:  Probably, Your Honor.

16          And if not, we would -- frankly, sitting here

17  today, I don't know why they wouldn't consent, because

18  they're a Defendant.  Why would they say no?  But, you know,

19  believe it or not, in the past, it is Ace Decade and Dawn

20  State that has opposed the stay.  Eventually, they consented

21  to it, but for three or four months, they were arguing that

22  no stay should be granted.

23          THE COURT:  Well, this matter is on for pretrial

24  conference, as well, today, as I said at the beginning of the

25  day, I think, because the summons was issued and so there's a

1  pretrial conference.  So now Ms. Wang has to file an answer

2  within 14 days of the entry of the order.

3          I don't see any reason why that time frame

4  shouldn't be complied with.  This adversary proceeding was

5  commenced in December.  It's almost April.

6          I just want to take a look at it.  Just hold on a

7  second.

8      (Pause)

9          THE COURT:  Summonses were served on January 3rd.

10     (Pause)

11         THE COURT:  So, what are you doing?  What's

12  everybody doing?  Don't you have an obligation to exchange

13  initial disclosures at this point and get things done or what

14  are we doing?  Are we moving for any kind of dispositive

15  motion, besides the motion to dismiss, which has now been

16  denied?

17         I mean, if we need -- you know, I need to

18  understand what the thought process is, and maybe you both

19  need to talk about that.  Maybe you're not prepared to talk

20  about that right now, and that's fine, but it's -- you

21  have 14 days to file an answer, so --

22         Go ahead.

23         MR. MACCO:  Your Honor, Cooper Macco, on behalf of

24  Defendant Wang.  I represent Ms. Wang only.  There are other

25  Defendants in this matter, which I believe the trustee --

1          THE COURT:  I understand.

2          MR. MACCO:  -- indicated haven't been served.

3  While I'm prepared to file an answer within 14 days, I'm not

4  sure if this matter can go forward until summonses have been

5  effected on all parties.

6          Additionally, as the Court is aware --

7          THE COURT:  Well, I think they've effected on all

8  parties.

9          Is there a summons that hasn't been effected on a

10 party in this case?

11         MR. MACCO:  It's my understanding the trustee just

12 said he was having trouble serving a Swiss individual.

13         THE COURT:  That's not in this case.

14         MR. MACCO:  It is.

15         THE COURT:  Oh, it is?  It's in this, as well?

16         MR. BASSETT:  The other Defendant is the

17 transferee.

18         THE COURT:  Oh, I see.  I'm sorry, I'm confusing

19 it with what you were just talking about.  Okay.

20         MR. MACCO:  So while Ms. Wang is prepared to file

21 an answer, I think there are some issues if we move forward

22 without all necessary parties.

23         THE COURT:  I'm sure that the Federal Rules of

24 Civil Procedure will figure that out for us, but you still

25 need to file an answer within 14 days.

1          MR. MACCO:  The answer will be filed, Your Honor.

2          And then that brings us back to another issue,

3   which the trustee has already raised in separate adversary

4   proceedings, which is that there's a criminal trial starting

5   in the middle of May in which my --

6          THE COURT:  It has no impact on this.

7          MR. MACCO:  Your Honor, my client is a Defendant

8   in that criminal trial.

9          THE COURT:  I understand that.

10         It has no impact.  Did you read the decisions of

11  the United States District Court for the Southern District of

12  New York trial judge, who said that there's no reason for the

13  bankruptcy case to be stayed and that the issues are

14  separate, so...

15         MR. MACCO:  I have, Your Honor, but I've also read

16  the motion of the trustee seeking to stay the other adversary

17  proceeding for the same reason, though.

18         THE COURT:  It's not for the same reason, so I

19  disagree with that.

20         MR. MACCO:  Understood, Your Honor.

21         THE COURT:  Okay.  Mr. Bassett, was there

22  something you wanted to add?

23         MR. BASSETT:  Nothing further, Your Honor.  I was

24  just going to say that I think it would make sense for us to

25  receive and review the answer and also assess for ourselves,

1   possible pathways forward in light of the fact that we have

2   multiple Defendants, and then also confer with counsel, as

3   necessary.  We'll certainly do that.

4           THE COURT:  What I mistakenly said is, I was

5   confusing what Trustee Despins just said, but it's true that

6   in this adversary proceeding, the transferee hasn't been

7   served -- that's the problem -- because the transferee is in

8   Switzerland.

9           MR. BASSETT:  That's correct, Your Honor.

10          And I would have to -- to be clear, I'll just add

11  the caveat that I would have to talk to my colleague, who is

12  kind of more up to speed on the Hague Convention service

13  process that we are undergoing there.

14          MR. DESPINS:  I'm familiar with it, Your Honor.

15          The first phase of service was attempted and

16  failed.  Now, we're going through the Swiss authorities that

17  need to actually execute the service themselves and that

18  takes time.

19          THE COURT:  Understood.

20          But when I look at the docket, I think everyone

21  else has been -- every other Defendant, excuse me, I believe

22  has been served.  That's what I see anyway.

23          MR. BASSETT:  That's correct, Your Honor.

24          THE COURT:  Okay.  All right.

25          Well, then, what I'm going to note for the record

1  is that the pretrial conference was held.  No further

2  pretrial conferences will be scheduled at this time; however,

3  as everyone should know, and I'm sure does know, a party can

4  ask for a status conference or a pretrial conference at any

5  time.  Whether the Court will grant that request, who knows,

6  but I do think we -- I think that there should be some form

7  of a conference set today -- what is today, March 26th? --

8  sometime in May if we don't, or before.

9          If something occurs, you know, anybody can ask for

10  a conference.  So if something occurs, we'll see what

11  happens.

12          Now, the other Defendants haven't filed any

13  answers either, have they?  They haven't filed anything.

14          MR. DESPINS:  That's correct, Your Honor.

15          THE COURT:  Well, I'll let you do whatever you

16  think is appropriate under the Federal Rules of Civil

17  Procedure; obviously, you're entitled to do that.  I

18  certainly don't need to say that.

19          So, I'm not sure there's anything else we can

20  address this afternoon.  Is there anything else we can

21  address?

22          MR. DESPINS:  No, Your Honor.

23          THE COURT:  Okay.  All right.

24          Then, as I noted, there'll be an order entered on

25  the motion to dismiss denying the motion to dismiss.

1              The order with regard to the storage units, I just

2    need to look at it again, but from my review sitting here, it

3    looked fine, and I think that will enter.

4              So I thank you all.  That's our last hearing

5    today, so court is adjourned.

6              THE CLERK:  All rise.  Court is adjourned.

7         (Proceedings concluded at 2:19 p.m.)

1

## CERTIFICATION

2          I certify that the foregoing is a correct

3   transcript from the electronic sound recording of the

4   proceedings in the above-entitled matter to the best of my

5   knowledge and ability.

6

7   /s/ William J. Garling                    March 27, 2024

8   William J. Garling, CET-543

9   Certified Court Transcriptionist

10  For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25